**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**

|  |  |  |
|---|---|---|
| | ) | **NO. 3:23-cv-00684** |
| **IN RE: HCA HEALTHCARE, INC.** | ) | |
| **DATA SECURITY LITIGATION** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE FRENSLEY** |

## CLASS ACTION COMPLAINT

Plaintiff Lisa Warren ("Plaintiff") brings this class action Complaint ("Complaint") against Defendant, HCA Healthcare, Inc. ("Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff seeks to obtain monetary damages, as well as declaratory and injunctive relief for a class of individuals (the "Class") who are similarly situated patients of Defendant.

2. This class action arises out of Defendant's failure to safeguard the Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (together, "Private Information") of the patients from hospitals and physician groups that it owned or operated. "Protected health information is information, including demographic information which relates to:

- The individual's past, present or future physical or mental health or condition,

- The provision of healthcare to the individual, or

- The past, present, or future payment for the provision of health care to the individual, and that identifies the individual or for which there is a reasonable basis to believe can be used to identify the individual. Protected health information includes many common identifiers (e.g., name, address, birth date, Social Security Number) when they can be

associated with the health information listed above."[1]

3.      The Department of Health and Human Services ("HHS") explains that identifying information alone is not considered PHI. But "if such information was listed with health condition, health care provision or payment data, such as an indication that the individual was treated at a certain clinic, then this information [personal names, residential addresses, or phone numbers] would be PHI."[2]

4.      Defendant's failure to safeguard information resulted in unauthorized access to its information systems on or around July 2023, and the compromised and unauthorized disclosure of that Private Information, causing widespread injury and damages to Plaintiff and the proposed Class members.

5.      Defendant is a healthcare organization "comprised of 182 hospitals and 2,300+ sites of care in 20 states and the United Kingdom."[3] Defendant's sites of care include: "surgery centers, freestanding ERs, urgent care centers, and physician clinics."[4]

6.      Upon information and belief, on or around July 5, 2023, Defendant "discovered that a list of certain information with respect to some of its patients was made available on an online platform by an unauthorized party." [5] Further, "the information was obtained by the unauthorized party in late June in what appears to be a theft from an external storage location exclusively used to automate the formatting of email messages, such as reminders that patients may wish to schedule an appointment and provide education on healthcare programs and services."[6]

7.      The HHS defines a breach as, "an impermissible use or disclosure under the Privacy Rule

---

[1] https://www.hhs.gov/hipaa/for-professionals/privacy/special-topics/de-identification/index.html
[2] *Id.*
[3] https://hcahealthcare.com/about/privacy-update.dot
[4] *Id.*
[5] *Id.*
[6] *Id.*

that compromises the security or privacy of the protected health information; an impermissible use or disclosure of protected information is presumed to be a breach...”[7]

8.    As a result of this data breach (“Breach”), the Private Information of patients at hospitals and medical facilities owned or operated by Defendant, were stolen and “made available by an unknown and unauthorized party on an online forum.” [8]

9.    The list of information exposed from the breach includes:

- •“Patient name, city, state and zip code;

- •Patient email, telephone number, date of birth, gender; and

- •Patient service date, location and next appointment date.”[9]

10.    Defendant’s investigation concluded, “that the list contains approximately 27 million rows of data that includes information for approximately 11 million HCA Healthcare patients.”[10]

11.    As a result of Defendant’s failure to safeguard Plaintiff’s and Class members Private Information, Plaintiff and Class members now face a lifetime risk of identity theft due to the nature of the information lost, and a diminution in the value of their private data.

12.    Defendant’s harmful conduct has injured Plaintiff and Class members in multiple ways, including: (i) the loss or diminished value of their Private Information; (ii) costs associated with the prevention, detection, and recovery form identity theft, tax fraud, and other unauthorized use of their data; (iii) lost opportunity costs to mitigate the Data Breach’s consequences, including lost time; and (iv) emotional distress associated with the loss of control over their highly sensitive Private Information.

---

[7] https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html
[8] https://investor.hcahealthcare.com/news/news-details/2023/HCA-Healthcare-Reports-Data-Security-Incident/default.aspx
[9] *Id.*
[10] https://hcahealthcare.com/about/privacy-update.dot#faq9

**PARTIES**

13.   Plaintiff Lisa Warren is an individual citizen of the State of South Carolina, residing in the city of Myrtle Beach (Horry County).

14.   Plaintiff is a patient of Grand Strand Medical Center which is an affected facility listed in Defendant's Data Security Incident announcement.[11]

15.   In more detail, Defendant, HCA Healthcare Inc., is a corporation organized under the laws of Tennessee with its headquarters in Nashville, Tennessee.

16.   Defendant's principal place of business is located at 1 Park Plaza, Nashville, Tennessee 37203-6572.

**JURISDICTION AND VENUE**

17.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

18.   This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

19.   This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District. Defendant has sufficient contacts in Tennessee, as it conducts a significant amount of its business in the state of Tennessee.

20.   Venue in this district is proper in this Court pursuant to 18 U.S.C. §1391(b)(1) because

---

[11] https://hcahealthcare.com/about/privacy-update.dot#SouthCarolina

Defendant's principal place of business is in this District.

## FACTUAL ALLEGATIONS

21.   Defendant is a company headquartered in Nashville, Tennessee that owns and operates "180 hospitals and approximately 2,300 ambulatory sites of care."[12]

22.   Plaintiff and Class members are current or former patients of hospitals or physician centers owned by Defendant who provided their Private Information to Defendant.

23.   The information held by Defendant at the time of the Breach included the unencrypted Private Information of Plaintiff and Class members.

24.   Upon information and belief, Defendant (through its providers) made promises and representations to the Patients that the Private Information collected would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it.

25.   Plaintiff and Class members provided their Private Information to Defendant (via the hospitals and physician groups Defendant owns or operates) with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26.   Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use the information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

---

[12] Supra n.3.

27. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. Defendant has a legal duty to keep Patients' Private Information safe and confidential.

28. Defendant had obligations under the FTC Act, common law, HIPPA, contract, industry standards, and representations made to Plaintiff and Class members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

29. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class members' Private Information. Without the required submission of Private Information, Defendant could not provide the services it does through the hospitals and physician groups it operates.

30. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class members' Private Information from disclosure.

The Data Breach

31. On or before July 5, 2020, an unauthorized third-party cybercriminal infiltrated an external storage location exclusively used to automate the formatting of email messages that Defendant uses to store sensitive personal information (including Private Information) of its patients (the "Breach").[13] This cybercriminal accessed the Private Information of Plaintiff and Class members including patient names, cities, states, zip codes, emails, telephone numbers, dates of birth, genders, patient service dates, patient service locations, and next appointment dates.[14] It is estimated that during the Breach, the hacker acquired approximately 27 million rows of data

---

[13] Supra n.8.
[14] *Id.*

which affects approximately 11 million patients.[15]

32. On or about July 10, 2023, Defendant posted a Data Security Incident report on its website informing Plaintiff and Class members of the Breach in which their Private Information was compromised.[16]

33. An update from Defendant was posted to their website on August 14, 2023. The update stated that Defendant learned of the unauthorized access and theft of Plaintiff's and Class members' Private Information on or around July 5, 2023, when the Private Information was made available on an online platform by the unauthorized party. [17] This means that the cybercriminal viewed and accessed the Private Information without authorization, and it is likely that the Private Information was removed from the system and sold. In the Breach, the cybercriminal acquired the most damaging kind of Private Information that can be exposed to unauthorized third parties, including but in no way limited to personally identifiable information and sensitive medical information.

34. The cybercriminal allegedly attempted to extort Defendant with the stolen data.[18] When the cybercriminal's demands were not met, the data was placed for sale on a deep web forum.[19]

**Acquiring, Collecting, and Storing Private Information and Preventing Breaches**

35. Due to Defendant's inadequate and insufficient data security measures, Plaintiff and Class members now face an increased risk of fraud and identity theft and must live with that threat forever. Plaintiff believes her Private Information was both stolen in the Breach and is still in the

---

[15] Supra n.10.
[16] Supra n.8.
[17] Supra n.3.
[18] https://www.databreaches.net/hca-healthcare-releases-statement-while-hacker-puts-data-up-for-sale-on-deep-web/#comments
[19] *Id.*

hands of the cybercriminal hackers. Plaintiff further believes her Private Information has already been sold and downloaded following the Breach, as that is the modus operandi of cybercriminals who perpetrate cyberattacks of businesses that collect PHI or Private Information.

36.    Defendant had obligations to Plaintiff and Class members to safeguard their Private Information and to protect it from unauthorized access and disclosure.

37.    Plaintiff and Class members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

38.    Defendant's data security obligations were important given the substantial increase in cyberattacks and/or data breaches of major companies preceding the date of this Breach, especially data breaches affecting medical service providers.

39.    Cyberattacks have become so prevalent that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are made aware of and can become prepared for a potential attack. "Entities like smaller municipalities are attractive to ransomware criminals because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[20]

40.    The increase in these attacks and attendant risk of future attacks, was widely known to the public and to anyone in the Defendant's industry including Defendant.

41.    Despite this knowledge, Defendant did not use reasonable security measures, procedures or practices appropriate to the nature of the sensitive information it was maintaining.

42.    Upon information and belief, the Private Information stored on Defendant's network was not encrypted causing Plaintiff and Class members' Private Information to be exposed.

---

[20] https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware

43.    Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information. Alternatively, Defendant could have destroyed the data that was no longer useful, especially outdated data.

44.    To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

       a.    Implement an awareness and training program. Since end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered;

       b.    Configure firewalls to block access to known malicious IP addresses;

       c.    Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system;

       d.    Set anti-virus and anti-malware programs to conduct regular scans automatically;

       e.    Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary;

       f.    Configure access controls – including file, directory, and network share permissions – with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares;

       g.    Disable macro scripts from office fields transmitted via email. Consider

using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications;

h.  Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder;

i.  Consider disabling Remote Desktop protocol (RDP) if it is not being used;

j.  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy;

k.  Execute operating system environments or specific programs in a virtualized environment;

l.  Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[21]

45.  To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency ("CISA"), the following measures:

a.  Update and patch your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware

---

[21] https://www.cisa.gov/news-events/cybersecurity-advisories/aa21-131a

attacks;

        b. Use and maintain preventative software programs. Install antivirus software, firewalls, and email filters – and keep them updated – to reduce malicious network traffic.[22]

46. Further, the CISA has produced a fact sheet for critical infrastructure owners and operators detailing the rising threat of ransomware to operational technology (OT) assets and control systems.[23]

47. To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

Secure internet-facing assets

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audit

- Remove privileged credentials


Thoroughly investigate and remediate alerts

- Prioritize and treat commodity malware infections as potential full compromise


Include IT Pros in security discussions

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely

---

[22] https://www.cisa.gov/news-events/news/protecting-against-ransomware
[23] https://www.cisa.gov/sites/default/files/publications/CISA_Fact_Sheet-Rising_Ransomware_Threat_to_OT_Assets_508C.pdf

Build credential hygiene

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

Apply principle of least-privilege

- Monitor for adversarial activities

- Hunt for brute force attempts

- Monitor for cleanup of Event Logs

- Analyze logon events

Harden infrastructure

- Use Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[24]

48. Given that Defendant was storing the Private Information of Plaintiff and Class members, Defendant could and should have implemented all of the above measures to prevent and detect cyber-attacks.

49. The occurrence of the Data Breach indicates that Defendant failed to adequately

---

[24] https://www.microsoft.com/en-us/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/

implement one or more of the above measures to prevent hacking attacks, resulting in the Breach and the exposure of the Private Information of an undisclosed amount of current and former consumers, including Plaintiff and Class members.

50. By obtaining, collecting, and using Plaintiff's Private Information for its own financial gain and business purposes, Defendant assumed legal and equitable duties and knew that it was responsible for protecting Plaintiff's Private Information from disclosure.

**The Ransomware Attack and the Data Breach were Foreseeable Risks of which Defendant was on Notice**

51. It is well known that Private Information, is a valuable commodity and a frequent, intentional target of cyber criminals and hackers. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

52. Individuals place a high value not only on their Private Information, but also on the privacy of that data. Identity theft causes "significant negative financial impact on victims," severe negative repercussions to its victims, as well as severe distress and hours of lost time trying to fight against the impact of identity theft.

53. Data Breach victims suffer long-term and, sometimes, lifelong consequences when their Private Information is taken and used by hackers.

54. In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[25]

55. In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020),

---

[25] https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/

Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

56.   Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

57.   According to an FBI publication, "Ransomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to operations and the loss of critical information and data."[26]

58.   Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs from being compromised.

**Defendant Had a Duty to Plaintiff to Properly Secure her Private Information**

59.   At all relevant times, Defendant had a duty to Plaintiff to properly secure her Private Information, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff, and to *promptly* notify Plaintiff when Defendant became aware that her Private Information was compromised.

60.   Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff. The special relationship arose because

---

[26] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware

Plaintiff entrusted Defendant with their Private Information when they were patients.

61. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff.

62. Security standards commonly accepted among businesses that store Private Information using the internet include, without limitation:

      a. Maintaining a secure firewall configuration;

      b. Maintaining appropriate design, systems, and controls to limit user access tocertain information as necessary;

      c. Monitoring for suspicious or irregular traffic to servers;

      d. Monitoring for suspicious credentials used to access servers;

      e. Monitoring for suspicious or irregular activity by known users;

      f. Monitoring for suspicious or unknown users;

      g. Monitoring for suspicious or irregular server requests;

      h. Monitoring for server requests for Private Information;

      i. Monitoring for server requests from VPNs; and

      j. Monitoring for server requests from Tor exit nodes.

63. The ramifications of Defendant's failure to keep consumers' PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims including Plaintiff may continue for years.

**The Value of Personal Identifiable Information ("PII")**

64. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[27] The FTC

---

[27] 17 C.F.R. §248.201 (2013)

describes "identifying information" as "any name or number that may be used, along or in conjunction with any other information, to identify a specific person," including, among other things, "name, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[28]

65.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[29] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[30] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[31]

66.     Theft of PHI is labeled as Medical Identity Theft and is gravely serious. The FTC defines Medical Identity Theft as, "when someone uses your personal information – like your name, Social Security number, health insurance account number or Medicare number- to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care."[32]

67.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other

---

[28] *Id.*

[29] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/

[30] Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, Dec. 6, 2017, available at: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/

[31] In the Dark, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous browsing/in-the-dark/

[32] https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft#:~:text=Medical%20identity%20theft%20is%20when,or%20get%20other%20medical%20care

16

healthcare service providers often purchase PII and PHI on the black market for the purposes of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

68.     As one would expect, this data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[33]

69.     Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII and PHI is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> Law enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[34]

70.     The Private Information stolen in the Breach has significant value, as PII and PHI is a valuable property right.[35] Sensitive PII can sell for as much as $363 per record according to the

---

[33] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html

[34] Report to Congressional Requesters, GAO, at 29 (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf

[35] See, e.g., John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets." (citations omitted)).

Infosec Institute.[36]

71.     There is also an active and robust legitimate marketplace for PII. In 2019, the data brokering industry was worth roughly $200 billion.[37] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker, who in turn aggregates the information and provides it to marketers or app developers.[38] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[39]

72.     As a result of the Data Breach, Plaintiff's and Class members' Private Information, which has an inherent market value in both legitimate and black markets, has been damaged and diminished by its unauthorized release to third party actors, to whom it holds significant value. However, this transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of Plaintiff's and Class members' Private Information has been lost, thereby causing additional loss of value.

73.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class members, including patient names, cities, states, zip codes, emails, telephone numbers, dates of birth, genders, patient service dates, patient service locations, and next appointment dates, and of the foreseeable consequences that would occur if Defendant's data security system and network was

---

[36] See Ashiq Ja, Hackers Selling Healthcare Data in the Black Market, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/
[37] David Lazarus, Shadowy Data Brokers Make the Most of Their Invisibility Cloak (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[38] https://datacoup.com/; https://worlddataexchange.com/about
[39] Computer & Mobile Panel, NIELSEN, available at https://computermobilepanel.nielsen.com/ui/US/en/sdp/landing

breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

74. Plaintiff and Class members now face years of constant surveillance of their medical and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

75. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s) and computer network, amounting to potentially tens of millions of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

76. The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class members. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class members are long lasting and severe. Once Private Information is stolen, particularly medical information, fraudulent use of that information and damage to victims may continue for years.

77. Defendant's credit monitoring offer and advice to Plaintiff places the burden on Plaintiff, rather than the Defendant, to monitor and report suspicious activities to law enforcement. Defendant expects Plaintiff to protect herself from *Defendant's* tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff in credit monitoring services upon discovery of the breach, Defendant merely sent instructions to Plaintiff about actions she can affirmatively take to protect herself.

78. These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing

identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's PII.

79. The injuries to Plaintiff were directly and proximately caused by Defendant' failure to implement or maintain adequate data security measures for the victims of its Data Breach.

## **Defendant Failed to Comply with FTC Guidelines.**

80. Federal and State governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[40]

81. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[41] The guidelines note businesses should protect the personal consumer andconsumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

82. The FTC recommends that businesses:

      a. Identify all connections to the computers where you store sensitive information.

---

[40] Federal Trade Commission, *Start With Security,* available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed August 16, 2023).
[41] Federal Trade Commission, *Protecting Personal Information: A Guide for Business,* available at: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed August 18, 2023).

b. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks.

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls— settings that determine which devices and traffic get through the firewall—to allow only trusted devices with

a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

83. The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

84. Because Plaintiff entrusted Defendant with her PII, Defendant had, and still has, a duty to the Plaintiff to keep her PII secure.

85. Plaintiff reasonably expected that when she provided PII to Defendant and its franchisees and subsidiaries, Defendant would safeguard her PII.

86. Defendant was at all times fully aware of its obligation to protect the personal a data,

including Plaintiff's. Defendant was also aware of the significant repercussions if it failed to do so.

87. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiffs' first name, last name, addresses, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

## Defendant Failed to Comply with Industry Standards

88. Several best practices have been identified that at a minimum should be implemented by companies like Defendant, including but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

## Defendant Failed to Follow Industry Best Practices

89. Other best cybersecurity practices include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

90. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation  PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5,  PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for  Internet Security's Critical Security Controls (CIS CSC), which are all established standards in  reasonable

cybersecurity readiness.

91. These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendants failed to comply with these accepted standards thereby opening the door to the cyber incident and causing the Breach.

## **Concrete Injuries are Caused by Defendant's Inadequate Security**

92. Plaintiff reasonably expected that Defendant would provide adequate security protections for her PII, and Plaintiff provided Defendant with sensitive, personal information, including her name and address.

93. Defendant's poor data security deprived Plaintiff of the benefit of her bargain. Plaintiff and other individuals whose PII was entrusted with Defendant understood and expected that, as part of that business relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff received data security services that were of a lesser value than what she reasonably expected. As such, Plaintiff suffered pecuniary injury.

94. Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Plaintiff is now, and for the rest of her life will be, at a heightened and substantial risk of identity theft. Plaintiff has also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

95. The cybercriminals who obtained the Plaintiff's PII may exploit the information they obtained by selling the data in dark markets or on the dark web. Having obtained these names, addresses, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in Plaintiff's name.

96. As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff has been deprived of the value of her PII, for which there is a

well-established national and international market.

97.  Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for fraudulent misuse of this information to be detected.

98.  Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.  Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[42]  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Plaintiff's PII will exploit the data at a later date or re-sell it to other possible exploiters.

99.  As a result of the Data Breach, Plaintiff has already suffered injuries, and now faces a substantial and imminent risk of future identity theft.

**Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft**

100.  Data Breaches such as the one experienced Plaintiff is especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

101.  The FTC, like the United States Government Accountability Office, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit

---

[42] Susan Ladika, *Study: Data Breaches Pose A Greater Risk* (July 23, 2014), https://www.foxbusiness.com/features/study-data-breaches-pose-a-greater-risk

freeze on their credit, and correcting their credit reports.[43]

102.  PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. Due to Defendant's conduct, Plaintiff must now worry about identity theft for many years to come.

**Plaintiff's Experience**

103.  Plaintiff is, and at all times relevant to this complaint, a resident and citizen of the State of South Carolina.

104.  Plaintiff is an individual who obtained medical care from Grand Strand Medical Center, which is owned by Defendant and one of the entities affected by the Breach.[44] To obtain this medical care, Plaintiff was required to provide her Private Information, whether directly or indirectly, to Defendant.

105.  Upon information and belief, at the time of the Breach – on or around July 5, 2023 Defendant retained Plaintiff's Private Information in its system.

106.  Plaintiff greatly values her privacy and Private Information, especially when receiving medical services. Prior to the Breach, Plaintiff took reasonable steps to maintain the confidentiality of her Private Information.

107.  Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

---

[43] *See* https://www.identitytheft.gov/Steps
[44] Supra n.3.

108. Since learning of the Breach, Plaintiff has spent additional time reviewing her medical information and statements. Since the date of the Breach, she has spent time reviewing her medical accounts and plans to spend more time monitoring her medical accounts and plans in the future.

109. The Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has not been forthright with information about the Breach.

110. Plaintiff plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her medical information and accounts as well as other accounts for any unauthorized activity

111. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## Plaintiff's Injuries and Damages

112. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members are presently experiencing and will continue experiencing actual harm from fraud and identity theft.

113. Plaintiff and Class members are presently experiencing substantial risk of out-of-pocket fraud losses, such as medical accounts being opened in their names, medical fraud, medical bills opened in their names, and similar identity theft.

114. Plaintiff and Class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more efficiently to Plaintiff and Class members.

115. Plaintiff and Class members are also incurring and may continue incurring out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Breach.

27

116. Plaintiff and Class members also suffered a loss of value of their Private Information when it was acquired by the cyber thieves in the Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

117. Plaintiff and Class members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiff and Class members paid to Defendant and their affiliates was intended to be used by Defendant to fund adequate security of Defendant's computer property and protect Plaintiff's and Class members' Private Information. Thus, Plaintiff and Class members did not get what they paid for.

118. Plaintiff and Class members have spent and will continue to spend significant amounts of time to monitor their medical accounts and records for misuse.

119. Plaintiff and Class members have suffered actual injury and damages as a direct result of the Breach. Plaintiff would not have provided Defendant with her PII had Defendant disclosed that it lacked data security practices adequate to safeguard PII. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Breach relating to:

   a. Finding fraudulent medical account, medical billing, medical insurance, and medical services being claimed or opened in their name;

   b. Purchasing credit monitoring and identity theft prevention;

   c. Placing "freezes" and "alerts" with credit reporting agencies and medical information and insurance organizations;

   d. Spending time on the phone with or at a medical institution or government agency to dispute fraudulent charges and/or claims;

e. Contacting medical institutions and closing or modifying medical accounts; and

f. Closely reviewing and monitoring medical insurance accounts, bank accounts, payment card statements, and credit reports for unauthorized activity for years to come.

120. Moreover, Plaintiff and Class members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing sensitive and confidential personal, and/or medical information is not accessible online, that access to such data is password protected, and that such data is properly encrypted.

121. Further, as a result of Defendants conduct, Plaintiff and Class members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever. Indeed, their Private Information has already been posted and sold on a dark web hacker's forum thereby heightening the likelihood of such disclosure occurring.

122. Plaintiff suffered actual injury in the form of damages and diminution in the value of her PII—a form of intangible property that she entrusted to Defendant.

123. Plaintiff has already suffered lost time, annoyance, interference, and inconvenience as a result of the Breach and has anxiety and increased concerns for the loss of her privacy.

124. Plaintiff reasonably believes that her Private Information may have already been sold by the cybercriminals. Had she been notified of Defendant's breach in a more timely manner, she could have attempted to mitigate her injuries.

125. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen PII, being placed in the

hands of unauthorized third-parties and possibly criminals.

126. Plaintiff has a continuing interest in ensuring that her PII, which upon information and belief remains backed up and in Defendant's possession, is protected and safeguarded from future breaches.

127. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class members have suffered a loss of privacy and are at a substantial and present risk of harm.

## <u>CLASS ACTION ALLEGATIONS</u>

128. Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representatives on behalf of the following:

> a. **Nationwide Class:** All individuals within the United States whose Personal and Private Information was accessed and/or acquired by an unauthorized party as a result of the Breach reported to have occurred on or about July 5, 2023.
>
> b. **South Carolina Subclass:** All persons within South Carolina whose Personal and Private Information was accessed and/or acquired by an unauthorized party as a result of the Breach reported to have occurred on or about July 5, 2023

129. The Nationwide Class and South Carolina Subclass shall collectively be referred to herein as the "Classes."

130. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

131. Excluded from the Classes are governmental entities, Defendant, its officers, directors, franchise owners, and any entity Defendant retains a controlling interest in; and the affiliates, legal

representatives, and employees of Defendant.

132. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

133. **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Specifically, as of July 10, 2023, there are at least 11 million individuals who had their Private Information compromised in the Breach. The identities of Class members are ascertainable through Defendant's records, Class members' records, publication notice, self-identification, and other means. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

134. **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual Members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

> a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's PII;
>
> b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Breach;
>
> c. Whether Defendant's data security systems prior to and during the Breach complied with applicable data security laws and regulations;
>
> d. Whether Defendant's data security systems prior to and during the

Breach were consistent with industry standards;

e.  Whether and to what extent Defendant owed a duty to Plaintiff and Class members to safeguard their PII;

f.  Whether Defendant breached its duty to Plaintiff and Class members to safeguard their PII;

g.  Whether computer hackers obtained Plaintiff's PII in the Breach;

h.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.  Whether Plaintiff suffered legally cognizable damages as a result of Defendant's misconduct;

j.  Whether Defendant's conduct was negligent;

k.  Whether Defendant had a duty not to disclose the Private Information of Plaintiff and Class members to unauthorized third parties;

l.  Whether Defendant had a duty not to use the Private Information of Plaintiff and Class members for non-business purposes;

m. Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class members;

n.  When Defendant actually learned of the Breach;

o.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class members that their Private Information had been compromised;

p.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class members that their Private Information had been

compromised;

q.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Breach to occur;

r.   Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class members;

s.   Whether Plaintiff and Class members are entitled to actual damages, nominal damages, and/or statutory damages as a result of Defendant's wrongful conduct;

t.   Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII and PHI;

u.   Whether adherence to FTC data security recommendations and measure recommended by data security experts would have reasonably prevented the Breach;

v.   Whether Plaintiff and Class members are entitled to restitution as a result of Defendant's wrongful conduct;

w.   Whether Defendant failed to provide notice of the Breach in a timely manner; and

x.   Whether Plaintiff is entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

135.  **Typicality** – Federal Rule of Civil Procedure 23(a)(3).  Plaintiff's claims are typical of those of the Classes because Plaintiff's Private Information, like that of every other Classes member, was compromised in the Data Breach.

136. **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

137. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the Members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel.

138. **Predominance**: Defendant has engaged in a common course of conduct toward Plaintiff and Class members, in that all the Plaintiff's and Class members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

139. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense

34

for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated Class members, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

140. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Classes as a whole.

141. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

  a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

  b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

  c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

142. Classes are readily ascertainable. Defendant has access to Class members' names and

addresses affected by the Breach. Class members have already been preliminarily identified and sent notice of the Breach by Defendant.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of the National Class and, alternatively, the Subclass)

143.  Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

144.  As part of the regular course of its business operations Defendant knowingly collected, came into possession of, maintained and stored the PII of Plaintiff and Class Members. Plaintiff and the Class were entirely dependent on Defendant to use reasonable measures to safeguard, secure and protect their PII from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. Plaintiff and the Class were vulnerable to the foreseeable harm of a security breach should Defendant fail to safeguard their PII.

145.  By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

146. Defendant owed a duty of care to Plaintiff and the Classes to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private

Information.

147. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class members could and would suffer if the data were wrongfully disclosed, and the importance of adequate security.

148. Defendant was subject to an independent duty, untethered to any contract between Defendant and Plaintiff or Class members.

149. Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class members, the critical importance of providing adequate security of that data, and the necessity for encrypting all data stored on Defendant's systems. Plaintiff and the Classes had no ability to protect their PII that was in Defendant's possession.

150. Defendant was in a special relationship with Plaintiff and the Classes with respect to the hacked PII because the aim of Defendant's data security measures was to benefit Plaintiff by ensuring that their PII would remain protected and secure. Only Defendant was able to ensure that its systems were sufficiently secure to protect Plaintiff's and other Class Members' PII. The harm to Plaintiff and the Class from its exposure was highly foreseeable to Defendant.

151. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and Class members, including basic encryption techniques freely available to Defendant.

152. Defendant was in a position to protect against the harm suffered by Plaintiff and Class members as a result of the Breach.

153. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Classes during the time the PII was within Defendant's possession or control.

154. Defendant's failure to provide timely and clear notification of the Breach to Plaintiff and the Classes prevented Plaintiff and the Classes from taking meaningful, proactive steps to securing their PII and mitigating damages.

155. Defendant had and continue to have a duty to adequately disclose that the Private Information of Plaintiff and Class members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

156. Defendant had a duty to comply with the industry standards set out above.

157. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

158. As a direct and proximate result of Defendant's negligence, Plaintiff, and members of the Class are in danger of present and continuing harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes. Plaintiff and Class members will need identity theft protection services and credit monitoring services for their respective lifetimes, considering the immutable nature of the Private Information at

issue, which includes sensitive medical information.

159. Further, Plaintiff and Class members have suffered (and will continue to suffer) other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non- economic losses.

160. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class members and the harm, or risk of imminent harm, suffered by Plaintiff and Class members. The Private Information of Plaintiff and Class members was stolen and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information, by adopting, implementing, and maintaining appropriate security measures.

161. Plaintiff seeks the award of actual damages on behalf of herself and the Classes.

162. In failing to secure Plaintiff's and Class members' Private Information and promptly notifying them of the Data Breach, Defendant is guilty of oppression, fraud, or malice, in that Defendant acted or failed to act with a willful and conscious disregard of Plaintiff's and Class members' rights. Plaintiff, therefore, in addition to seeking actual damages, seek punitive damages on behalf of herself and the Classes.

163. As a direct and proximate result of Defendant's negligence Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Breach, including but not limited to efforts spent researching how to

39

prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to monitor bank accounts and credit reports, prevent, detect, contest, and repair the impact of the PII compromised as a result of the Breach for the remainder of the lives of Plaintiff and members of the Classes.

164. Plaintiff and members of the Classes are entitled to actual damages in amounts to be proven at trial.

## COUNT II
### Negligence Per Se
### (On Behalf of the National Class and, alternatively, the Subclass)

165. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

166. Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII by companies such as Defendant. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

167. Plaintiff and the Classes are within the class of persons that the FTC Act was intended to protect.

168. The FTC publications and orders also form the basis of Defendant's duty to the Classes.

169. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Classes.

170. Defendant gathered and stored the PII of Plaintiff and the Classes as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

171. Defendant violated the FTC Act by failing to use reasonable measures to protect the PII of Plaintiff and Class Members and by not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information that it obtained and stored and the foreseeable consequences of a breach of that data.

172. Defendant breached its duties to Plaintiff and the Classes under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard their PII, and by failing to provide prompt notice without reasonable delay.

173. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant, which is recognized by laws and regulations, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and the Classes or minimize the Data Breach.

174. Defendant's multiple failures to comply with applicable laws and regulations, and the violation of Section of 5 of the FTC Act constitutes negligence *per se*.

175. Defendant owed Plaintiff and other Class Members a common law duty to use reasonable

care to avoid causing foreseeable risk of harm to Plaintiff and the Classes when obtaining, storing, using, and managing their PII, including acting to reasonably safeguard such data and providing notification to Plaintiff and the Class of any breach in a timely manner so that appropriate action could be taken to minimize losses.

176. Defendant had duties to protect and safeguard the PII of Plaintiff and other Class Members from being vulnerable to compromise by taking common-sense precautions when dealing with highly sensitive PII. Additional duties that Defendant owed Plaintiff and the Class include:

  a. Exercising reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that individuals PII was adequately secured from impermissible release, disclosure, and publication;

  b. To protect Plaintiff's and the Class's PII in its possession by using reasonable and adequate security procedures and systems; and

  c. To promptly notify Plaintiff and the Classes of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their PII.

177. Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the PII that had been entrusted to them.

178. Defendant breached its duties of care by failing to adequately protect Plaintiff and the Classes' PII. Defendant breached its duties by:

  a. Failing to exercise reasonable care in obtaining, retaining, securing,

42

safeguarding, protecting, and deleting the PII in its possession;

b.  Failing to protect the PII in its possession using reasonable and adequate security procedures and systems;

c.  Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store PII;

d.  Failing to adequately train its employees to not store unencrypted PII in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e.  Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's PII;

f.  Failing to mitigate the harm caused to Plaintiff and the Classes;

g.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h.  Failing to promptly notify Plaintiff and other Class Members of the Data Breach that affected their PII.

179.  Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

180.  Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant' possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

181.  As a direct and proximate result of Defendant's negligence per se, Plaintiff and members

of the Class have suffered injury and are entitled to damages including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**COUNT III**
**Invasion of Privacy**
**(On Behalf of the National Class and, alternatively, the Subclass)**

182. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

183. Plaintiff and Class members had a legitimate expectation of privacy to their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

184. Defendant owed a duty to Plaintiff and Class members to keep their Private Information confidential.

185. Defendant intentionally failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted Private Information of Plaintiff and Class members.

186. Defendant allowed unauthorized and unknown third parties access to and examination of the Private Information of Plaintiff and Class members, by way of Defendant's failure to protect the Private Information.

187. The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and Class members is highly offensive to a reasonable person.

188. The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Defendant as part of their relationships with Defendant, but privately with an intention that the Private

Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

189. The Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

190. Defendant acted with intention and a knowing state of mind when it permitted the Breach to occur because it was with actual knowledge that their information security practices were inadequate and insufficient.

191. Because Defendant acted with this knowing state of mind, it had notice and knew its inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class members.

192. As a proximate result of the above acts and omissions of Defendant, Private Information of Plaintiff and Class members was disclosed to third parties without authorization, causing Plaintiff and Class members to suffer damages.

193. Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

## COUNT IV
### Breach of Implied Contract
### (On Behalf of the National Class and, alternatively, the Subclass)

194. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

195. Defendant offered to provide services to patients, which are Plaintiff and Class members, in exchange for payment.

196. Plaintiff and Class Members provided PII to Defendant (or its third-party agents) in exchange to receive medical care.

197. In exchange, Defendant impliedly promised to protect Plaintiff's and Class members' Private Information through adequate data security measures from unauthorized disclosure.

198. Plaintiff and the Class members accepted Defendant's offer by providing Private Information to Defendant in exchange for receiving Defendant's services, and then by paying for and receiving the same.

199. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

200. Implicit in the agreement between Plaintiff, Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

201. Defendant required Plaintiff and Class Members to provide their PII as part of regular business practices.

202. Plaintiff and the Class members accepted Defendant's offer by providing Private Information to Defendant in exchange for receiving Defendant's services, and then by paying for and receiving the same.

203. Plaintiff and Class Members entered into the implied contracts with the reasonable expectation and belief that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards. Plaintiff and Class Members believed that Defendant would use part of the monies paid to Defendant under the implied contracts or the monies obtained from the benefits derived from the PII they provided to fund adequate and reasonable data security practices.

204. Plaintiff and the Classes would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures. The safeguarding of Plaintiff's and Class Member's PII was critical to realize the intent of the parties.

205. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

206. Defendant materially breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their Private Information, violating industry standards necessarily incorporated in the agreement.

207. Plaintiff and Class members have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

208. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose on each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms,

means preserving the spirt- not merely the letter- of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract along with its form.

209.  Defendant's conduct as alleged herein also violated the implied covenant of good faith and fair dealing inherent in every contract.

210.  As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members sustained damages.

211.  Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

212.  Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Plaintiff and Class Members for a period longer than the inadequate one-year currently offered.

### COUNT V
**Unjust Enrichment**
**(On Behalf of the National Class and, alternatively, the Subclass)**

213.  Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

214.  This cause of action is pled in the alternative to Count IV.

215.  Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of medical care from Defendant, and in connection thereto, by providing their PII to Defendant with the understanding that Defendant would pay for the administrative costs of

reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII held by Defendant.

216. Defendant knew Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

217. Acceptance of the benefit under these facts and circumstances make it inequitable for Defendant to retain that benefit without payment of the value thereof. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class member's PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members thus suffered as a direct and proximate result of Defendant's decision to prioritize profits over the requisite data security.

218. Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

219. Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

220. If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

221. Plaintiff and Class Members have no adequate remedy at law.

222. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members

have suffered and will continue to suffer other forms of injury and/or harm.

223. For the benefit of Plaintiff and Class Members, Defendant should be compelled to disgorge proceeds that they unjustly received from them into a common fund or constructive trust.

## COUNT VI
### Declaratory Judgment
### (On Behalf of the National Class and, alternatively, the Subclass)

224. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

225. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

226. An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff from further data breaches that compromise their PII.

227. Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

228. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following: (i) Defendant continues to owe a legal duty to secure current and former patients' PII and to timely notify consumers of a data breach

under the common law, Section 5 of the FTC Act, and various state statutes; (ii) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff's and Class Members' PII.

229. The Court also should issue corresponding prospective injunctive relief requiring that Defendant employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

230. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach targeted at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach targeted at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

231. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs which is targeted at Defendant, Plaintiff will likely be subjected to fraud, identify theft, and other harms described herein. Alternatively, the cost of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

232. Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and the millions of individuals whose PII would be further compromised.

## COUNT VII
### Breach of Fiduciary Duty
### (On Behalf of the National Class and, alternatively, the Subclass)

51

233. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

234. Defendant had a fiduciary duty to Plaintiff.

235. Plaintiff entrusted Defendant as a data retention service and the facts of this case prove the existence of this duty. The existence of a confidential or fiduciary relationship is a question for the jury. Such relationship may be created by law, contract, or the facts of a particular case. Moreover, because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of this relationship is generally a factual matter for the jury to resolve.

236. Defendant breached this duty by failing to adequately protect Plaintiff's information.

237. This breach of fiduciary duty caused damages to Plaintiff in that her information is now disseminated across the world wide web which subjects her to financial crimes, identity theft, as well as constant worry regarding the use of her information.

238. Plaintiff and Class Members have been damaged by the breach of fiduciary duty in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

a. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

b. For an order declaring the Defendant's conduct violates the causes of action referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

e. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

f. For prejudgment interest on all amounts awarded;

g. For an order of restitution and all other forms of equitable monetary relief;

h. For injunctive relief as pleaded including but not limited to, injunctive and other equitable relief as necessary to protect the interests of Plaintiff and Class members, including but not limited to an order:

   i. Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

   ii. Requiring Defendant to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii. Requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

   iv. Requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information for Plaintiff's and Class

members' respective lifetimes;

v.   Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class members;

vi.   Prohibiting Defendant from maintaining the Private Information of Plaintiff and Class members on a cloud-based database;

vii.   Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

viii.   Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix.   Requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

x.   Requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

xi.   Requiring Defendant to conduct regular database scanning and securing checks;

xii.   Requiring Defendant to establish an information security training program

that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class members;

xiii.    Requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv.    Requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xv.    Requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested and updated;

xvi.    Requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvii. Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

i. For an award of damages including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined by a jury at trial;

j. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees;

k. For prejudgment interest on all amounts awarded; and

l. Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

[signatures on the following page]

Dated: August 30, 2023

Respectfully submitted,

Blake G. Abbott*
Paul J. Doolittle*
**POULIN | WILLEY
ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: blake.abbott@ poulinwilley.com
        paul.doolittle@ poulinwilley.com


Mark P. Chalos (TN BPR No. 019328)
mchalos@lchb.com
Kenneth S. Byrd (TN BPR No. 023541)
kbyrd@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Ave S #1640
Nashville, TN 37201
Tel: 615-313-9000

Jason L. Lichtman
jlichtman@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLC**
250 Hudson Street, 8th Floor
New York, NY 10013-1314
Tel: 212-355-9500

Michael W. Sobol
msobol@lchb.com
Jallé H. Dafa
jdafa@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLC**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000

 *Pro Hac Vice* Forthcoming

*Counsel for Plaintiff and the Proposed Class*